# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

BARRY BROOKHART,

                    Plaintiff,

-vs-                                                    Case No.  2:11-cv-21-FtM-36SPC

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                    Defendant.

_____/


## REPORT AND RECOMMENDATION[1]

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on Plaintiff's Memorandum of Law in Support of the Complaint (Doc. #25) filed on September 26, 2011. Defendant Commissioner filed its Memorandum in Support of the Commissioner's Decision (Doc. #26) on November 23, 2011. Thus, the Motion is ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case and issues the following Report and Recommendation.

---

[1]This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. § 405(g).

## **FACTS**

### *Procedural History*

Plaintiff filed a Title II application for a period of disability and disability insurance benefits and supplemental security income (SSI) on March 21, 2006, alleging disability beginning December 31, 2005.[2] (Tr. 69-73, 295-301). The Agency denied this application initially on June 19, 2006, and on reconsideration on September 11, 2006. (Tr. 55-58, 302-07). Administrative law judge (ALJ) Dawn B. Lieb held a hearing on December 4, 2008, in Fort Myers, Florida. (Tr. 388-422). At the hearing, Plaintiff appeared and testified. Plaintiff was represented by an attorney. (Tr. 20). The ALJ issued an unfavorable decision dated January 21, 2009, denying Plaintiff's claims. (Tr. 20-28). The Appeals Council denied Plaintiff's request for review on December 8, 2010, making the hearing decision the final decision of the Commissioner. (Tr. 3-6). As a consequence, on January 20, 2011, Plaintiff timely filed a Complaint with this Court. (Doc. #1). This case is ripe for review under 42 U.S.C. § 1383(c)(3), which incorporates by reference 42 U.S.C. § 405(g).

### *Plaintiff's History*

Plaintiff was 48 years old with an eleventh grade education when the ALJ rendered his decision. (Tr. 28, 69, 98, 394-95). Plaintiff reported that he was disabled due to anxiety and panic attacks, high blood pressure, and an inability to bear weight with his right knee. (Tr. 92).

### *Medical Evidence*

On June 8, 2004, claimant fell twice, rupturing patellar tendon in his right knee as indicated by a magnetic resonance imaging ("MRI") test on June 21, 2004. (Tr. 242-43). Consequently, on

---

[2] Plaintiff amended his alleged onset date to June 8, 2003 at his hearing. (Tr. 395).

July 2, 2004, claimant underwent a tenorrhaphy on his right knee. (Tr. 245-246). Following the surgery, claimant resorted to extensive physical therapy in 2004 and 2005. (Tr. 220-38). Following the course of therapy, on June 16, 2005, claimant underwent a Functional Capacity Assessment ("FCE"), performed by a physical therapist, Dawn Y. Stermer-Pfister, at Lee Center for Sports Medicine. (Tr. 197-201). The therapy tested Plaintiff's functional capacity and limitations based on the physical demands used by the U.S. Department of Labor in classifying jobs in the national competitive labor market. (Tr. 197).

Objective evaluation indicated limited range of motion and pain in Plaintiff's right knee. (Tr. 197). Objective measurements also indicated significant atrophy in the Plaintiff's right leg (Tr. 197-98). At the beginning of the evaluation Plaintiff reported that his pain level was 1-2 out of 10. (Tr. 198).

The evaluation tested Plaintiff' ability to perform climbing, crouching, lifting, carrying, pushing/pulling, stooping, reaching, kneeling, crawling, turning/lifting, balancing, and tested Plaintiff's hand grasp and pinch. (Tr. 198-201). During the evaluation, the evaluator repeatedly noted that due to his physical problems Plaintiff exercised unsafe techniques and poor body mechanics which put him at risk of fall or injury. (Tr. 198-201). She also noted that Plaintiff exhibited shortness of breath, excessive sweating, and fatigue when performing different tasks. (Tr. 198-201). Plaintiff also needed to take one to five minute breaks between each activity. (Tr. 198-201).

Plaintiff had difficulties when trying to perform reaching and lifting ten pounds from a standing position. (Tr. 200). With regards to reaching, Mrs. Stermer-Pfister noted that "[a]s with other standing activities due to significant altered mechanics and exacerbations of symptoms, task

was stopped before completion to avoid risk of injury." (Tr. 200). In addition, the second attempt to perform the same led to no success. (Tr. 200).

Finally, Plaintiff was treated on bimonthly basis for anxiety since at least 2002 by Ephraim G. Aguilar, M.D. (Tr. 248-82).

### Administrative Law Hearing Before the ALJ

At the hearing, Plaintiff testified that he is 6 feet ½ inches tall and his weight is 300 pounds. (Tr. 392-93). He is suffering from anxiety attacks and is taking anxiety medication since the age of 23. (Tr. 394). Prior to 2003, he was receiving treatment at Ruth Cooper Center for two years for this condition. (Tr. 394). He does not drive unless he needs to go somewhere near his home. (Tr. 394). He does not perform any shopping unless it is simply to go in and buy a pack of cigarettes. (Tr. 394). Longer periods of shopping would cause claimant to become claustrophobic and to suffer panic attacks. (Tr. 394).

Plaintiff further testified that he has an eleventh grade education and never received a GED. (Tr. 395). He worked as a diesel mechanic since about the age of twelve. (Tr. 395). Claimant then testified that he got injured on June 8, 2003, and amended his alleged onset of disability date to June 8, 2003 through his attorney. (Tr. 395).

The last time claimant worked was June 5, 2003. (Tr. 396). Plaintiff then consulted Dr. DeIorio, who stated that claimant had severed patella tendon in his right knee. (Tr. 397). Plaintiff underwent a surgery and was put in a cast. (Tr. 98-399). When the cast was removed, Plaintiff was put in a wheelchair with immobilizer. (Tr. 399). Plaintiff also underwent rehabilitation treatment at Lee Center for Sports Medicine. (Tr. 399). This treatment stopped because claimant was unable to pay for it and the only option Plaintiff had left was to go to Family Health Centers for treatment.

-4-

(Tr. 399-400). Plaintiff was also refused treatment by orthopedic surgeons because he had no insurance (Tr. 400).

Plaintiff testified that he suffers from pain in his right knee, down to the bottom of his right foot. (Tr. 400). Plaintiff further stated that he no longer works on cars. (Tr. 402-03). Plaintiff can walk without a cane, but he needs to use it when it is cold because when cold gets into his knee it becomes almost impossible for him to walk. (Tr. 403). Plaintiff received the cane through his physical therapy program. (Tr. 403). Through the course of the treatment, he went from wheelchair to walker to cane. (Tr. 403). He further testified that after physical therapy he was told that there is nothing more that could be done for his knee to improve its condition. (Tr. 403).

Plaintiff further testified that his anxiety has deteriorated. (Tr. 405). When Plaintiff first started, he was taking one Xanax per day. (Tr. 406). Now he is taking three Xanax pills per day. (Tr. 406). This deterioration occurred before he was injured. (Tr. 406).

Plaintiff has a hernia in his stomach and needs an operation. (Tr. 407, 409). However, Dr. Berdick told him that he must lose 100 pounds before an operation could be performed. (Tr. 407).

Plaintiff further testified that he can sit for only about 30 minutes before he must change position. (Tr. 408). He can stand, but lately was not able to stand long enough to smoke a cigarette before he needed rest. (Tr. 408). Plaintiff also has difficulties walking. (Tr. 409).

Plaintiff further stated that he would probably be able to stand for a total of two hours in an eight-hour day. (Tr. 414). However, he would have problems walking as one day he walked ½ a block at 9 a.m. and was "finished" for the day. (Tr. 414).

The ALJ next took testimony of a vocational expert. (Tr. 416). The VE testified that Plaintiff worked as a diesel mechanic, DOT no. 625.281-010, which is heavy in exertion, with an

SVP of 7. (Tr. 416). These skills are transferable to automobile mechanic job, which is a job of medium exertion. (Tr. 416).

The ALJ then asked the VE to assume an individual of the same age, education, and work experience as claimant, who is limited to light work, able to lift 20 pounds occasionally and 10 pounds frequently. (Tr. 417). This individual is also able to sit for six hours and stand for two hours, and needs to change position every thirty minutes by standing up and sitting down. (Tr. 417). Such individual can only occasionally use right lower extremity for repetitive movements and has unlimited upper extremity movement. (Tr. 419). In addition such individual is limited to occasional, climbing, balancing, stooping, kneeling, crouching, crawling, and bending. (Tr. 417). The ALJ did not impose any mental limitations. (Tr. 417-18).

The VE testified that individual in this hypothetical could not perform claimant's past relevant work. (Tr. 418). However, such individual could perform other work such as small product assembler, DOT no. 739.687-010, which includes 350 jobs in the region, 3,200 jobs in the State, and 100,000 jobs in the national economy. (Tr. 418). Such individual could also perform the job of electronics worker, 726.687-010, which includes 250 jobs in the region, 2,000 in the State, and 70,000 jobs in the national economy. (Tr. 418).

The VE further testified that if such an individual could work less than 8 hours a day or could not lift even 10 pounds, there would be no work available. (Tr. 419). In addition, the VE stated that standing and walking less than two hours per day and sitting less than four hours per day would eliminate any work the individual could do. (Tr. 420). The VE also stated that if such individual could tolerate minimal stress for only 1/3 of a workday, it would eliminate this type of work. (Tr. 420). Finally, the VE testified that his testimony is consistent with the DOT. (Tr. 421).

Accordingly, the ALJ found Plaintiff not disabled at any time from June 8, 2003, Plaintiff's alleged onset date, through the date of the ALJ's decision. (Tr. 28).

*Administrative Law Judge's Decision*

The ALJ found Plaintiff experienced the following severe impairments: "status post right knee injury with rupture of the patella tendon and status post arthroscopic repair." (Tr. 14). The ALJ found Plaintiff's anxiety was not a severe impairment after determining that it caused only mild limitations in activities of daily living, social functioning, concentration, persistence and pace, and no episodes of decompensation. (Tr. 23). None of Plaintiff's impairments were of listing level severity. (Tr. 23-24).

The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1527(b) and 416.967(b), except that Plaintiff could sit for six hours in an eight-hour workday, stand/walk for two hours in an eight-hour workday, occasionally pedal with his lower extremities as well as occasionally climb, balance, stoop, kneel, crouch, crawl, and bend. (Tr. 24). Plaintiff had past relevant work as a diesel mechanic and had acquired mechanical knowledge from that work. (Tr. 27).

The vocational expert (VE) testified, and the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy such as small parts assembler and electrical worker. (Tr. 27-28, 416-21). Accordingly, the ALJ found Plaintiff not disabled at any time from June 8, 2003, Plaintiff's alleged onset date, through the date of the ALJ's decision. (Tr. 28).

## **STANDARD OF REVIEW**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a Plaintiff is disabled, the ALJ must follow the sequential inquiry described in the regulations (20 C.F.R. §§ 404.1520(a), 404.920(a)). The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

> Step 1. Is the Plaintiff engaged in substantial gainful activity? If the Plaintiff is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

> Step 2. Does the Plaintiff suffer from a severe impairment? If not, then the Plaintiff is not disabled. If there is a severe impairment, the ALJ moves on to step three.

> Step 3. Does the Plaintiff's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the Plaintiff is disabled. If not, the next question must be resolved.

> Step 4. Can the Plaintiff perform his or her former work? If the Plaintiff can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

> Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the Plaintiff is not disabled. If the Plaintiff cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as

a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve (12) months (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe, making the plaintiff unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy (42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511). To determine whether the plaintiff is disabled, the ALJ is required to evaluate the claim according

to the established five-step evaluation process.

The Plaintiff states that the ALJ committed four errors for which this case should be revered and remanded for further development or for payment. Specifically, Plaintiff questions: (1) Whether the ALJ properly relied on the testimony of the vocational expert (VE) to find that Plaintiff could perform other work; (2) Whether the ALJ correctly assessed Plaintiff's RFC; (3) Whether the ALJ failed to consider Plaintiff's obesity and recognize that it is a severe impairment; (4) Whether the ALJ failed to consider Plaintiff's anxiety and panic disorder impairments and recognize these as severe impairments. The Court will consider each of these issues below.

### 1. Whether the ALJ properly relied on the testimony of the VE to find that Plaintiff could perform other work

Plaintiff argues that the ALJ did not resolve the apparent conflict between the VE testimony and the DOT. Specifically, Plaintiff alleges that there was a conflict between the VE testimony and the DOT because the jobs suggested by the VE required approximately 6 hours of standing or walking and the ALJ limited claimant in his RFC to no more than 2 hours of standing or walking. In his decision, the ALJ provided the following limitations with regard to Plaintiff's RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant has the ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently, sit 6 hours in an 8-hour workday and stand/walk 2 hours in an 8-hour workday. However, the claimant can only occasionally pedal with his lower extremities as well as occasionally climb, balance, stoop, kneel, crouch, crawl, and bend.

(Tr. 24). Plaintiff goes on to argue that the conflict between the VE testimony and the DOT was apparent, and the ALJ failed to resolve it.

After properly assessing Plaintiff's RFC, the ALJ found, at step four of the sequential evaluation process, that Plaintiff could not perform his past relevant work. (Tr. 27). See 20 C.F.R.

§§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f).  The ALJ, therefore, had to decide at the fifth and final step if Plaintiff could perform other work.  See 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).  When a plaintiff proves he cannot perform his past relevant work, the burden shifts to the Commissioner to produce evidence that other work exists that the claimant could perform given his RFC and other vocational characteristics.  See Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).  The plaintiff, however, still must prove that he cannot perform the jobs identified by the Commissioner to meet his burden of proving he was disabled.  See Doughty, 245 F.3d at 1278 n.2.

In this case, to help determine whether Plaintiff could perform other work, the ALJ obtained testimony from a VE.  (Tr. 416-21).  See 20 C.F.R. §§ 404.1560(c), 416.960(c).  The ALJ presented the VE with a hypothetical question asking whether an individual of Plaintiff's age, education, and past work experience, with the following limitations could perform any jobs: limited to light work; lifting and carrying 20 pounds occasionally and 10 pounds frequently, to sitting for six hours in an eight hour day; standing for two hours in an eight-hour day; a need to change position every 30 minutes; limited use of the right lower extremity for occasional repetitive movements; occasional climbing, balancing, stooping, keeling, crouching, crawling, and bending.  (Tr. 417).  The VE responded that such a person could perform the light unskilled jobs of small products assembler, DOT No. 739.687-030, and electronics worker, DOT No. 726.687-010 (Tr. 418).  Plaintiff argues that the VE's testimony is inconsistent with the DOT because the jobs identified are classified as light work and require more standing or walking than the two hours the ALJ determined Plaintiff could perform. Pl's Br. at 11-13.  Plaintiff also argues that the ALJ failed to resolve the conflict between the DOT and the VE testimony. Pl's Br. at 13-14.

-11-

The Eleventh Circuit has held that when the VE's testimony conflicts with the DOT, the VE's testimony trumps the DOT. Miller v Commissioner of Social Security, 246 Fed. Appx. 660, 661 (11th Cir. Aug. 31, 2007) (citing Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999)). The VE's testimony controls because the VE's task is to determine whether there are jobs in the region which the claimant can perform with his precise disabilities or limitations. Id. Further, the Court of Appeals noted that the DOT states it is not a comprehensive source of information and that it should be supplemented with local job information. Lipson v. Barnhart, 347 F. Supp. 2d 1182, 1189 (M.D. Ala. 2004). The VE provides this vital [supplemental] information. Id. at 1189. Therefore, an ALJ may rely on the VE's testimony even if it is inconsistent with the DOT. Jones, 190 F.3d at 1229. The Eleventh Circuit has indicated that SSR 00-4p does not require an ALJ to independently investigate a VE's testimony or further interrogate a VE when the VE testifies his or her testimony is consistent with the DOT and the record does not reveal any apparent conflicts.

In this case, the ALJ, however, in accordance with SSR 00-4p, specifically asked the VE if his testimony was consistent with the DOT, and the VE said yes. (Tr. 421). Therefore, the ALJ in Plaintiff's case complied with SSR 00-4p by asking the VE if a conflict existed between his testimony and the DOT. The ALJ, therefore, properly relied on the VE's testimony to find Plaintiff could perform other work in the national economy. Therefore, the Court respectfully recommends that substantial evidence supports the ALJ's reliance on the VE's testimony that Plaintiff could perform his past relevant work.

## *2. Whether the ALJ correctly assessed Plaintiff's RFC*

Plaintiff argues that the ALJ erred in her treatment of evidence supplied by a physical therapist who completed a Functional Capacity Evaluation (FCE) when the ALJ failed to consider the evidence or give it weight.  On June 16, 2005, Plaintiff underwent a FCE at the Center for Sports Medicine, performed by a physical therapist, Dawn Y. Stermer-Pfister.  (Tr. 197-201).  The evaluation involved a detailed assessment with respect to Plaintiff's ability to climb, crouch, lift, carry, push/pull, stoop, reach, kneel, crawl, turn while lifting, balance, and grasp with his hand.  (Tr. 197-201).  Plaintiff argues that the ALJ's consideration of this evaluation was perfunctory at best and the ALJ's decision did not otherwise include a more detailed discussion of Mrs. Stermer Pfister's findings or any discussion as to weight given to these findings; as the opinion stated:

> [A] Functional Capacity evaluation performed in June 2005, indicated that the claimant continued to complaint of constant right knee pain. The evaluator noted that the claimant needed to rest often between tasks and that he had some difficulty with his right lower extremity.

(Tr. 25).  Plaintiff argues that there were limitations in the FCE that the ALJ did not discuss and that his limitations on the reaching portion of the examination would preclude his ability to perform the jobs identified by the VE because those jobs require frequent or constant reaching. Pl's Br. at 17, DOT Nos. 726.687-010 and 739.687-030.

The fourth step in the evaluation process requires the ALJ to determine the plaintiff's residual functional capacity (RFC) and based on that determination, decide whether the plaintiff is able to return to his/her previous work.  McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).  The determination of RFC is within the authority of the ALJ and along with the claimant's age, education, and work experience the RFC is considered in determining whether the claimant can work.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)).

The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); Lewis, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). The ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. Phillips, 357 F.3d at 1238. That is, the ALJ must determine if the claimant is limited to a particular work level. Id. (citing 20 C.F.R. § 404.1567).

In this case, the ALJ discussed the FCE that was performed in June 2005, at which the ALJ indicated that Plaintiff continued to complain of constant right knee pain and that the evaluator noted that Plaintiff needed to rest often between tasks and that he had some difficulty with his right lower extremity. (Tr. 25) (citing Exhibit F, pgs. 74 and 93-97). Prior to this in her opinion, the ALJ noted that the records indicate that the Plaintiff underwent 28 physical therapy visits. The ALJ discussed Plaintiff's physical therapy visits, and noted that after three months of treatment, the physical therapist remarked that Plaintiff's long and short-term goals had been met. (Tr. 25, 220). The ALJ also discussed the functional capacity evaluation completed by Dawn Y. Stermer-Pfister and Ms. Stermer-Pfister's notation that Plaintiff had to rest between tasks and had difficulty with his right lower extremity. (Tr. 25, 197-201). Therefore, the Court recommends that the ALJ did consider the FCE completed in June 2005, contrary to Plaintiff's assertions.

Moreover, while the ALJ did not accord any weight to the opinion of the physical therapist who performed the functional capacity evaluation, he did accord great weight to the opinion from Dr. DeIorio, that Plaintiff would have significant improvement with therapy. (Tr. 26, see Tr. 240). In fact, the physical therapist did opine that Plaintiff had met his therapy goals after three months of

treatment. (Tr. 220). In addition to considering the medical evidence, the ALJ also considered Plaintiff's credibility in evaluating Plaintiff's claim.

The Court now addresses Plaintiff's argument that his limitations on the reaching portion of the examination would preclude his ability to perform the jobs identified by the VE because those jobs require frequent or constant reaching. Plaintiff completed three out of four tasks for reaching with both arms, including lifting a 10 pound weight from a waist high surface to an overhead shelf and back again 10 times, reaching forward and lifting a 10 pound weight from waist high surface and returning it to that same place ten times while standing, and picking up a small object from the floor while seated. (Tr. 200). The only reaching exercise Plaintiff was unable to complete was the ability to pick up a small object from the floor from a standing position. (Tr. 200). It is clear from Plaintiff's ability to complete almost all of the reaching tasks that he would be capable of performing the reaching required by the electronics worker (from one-third to two thirds of the time) and small products assembler (two-thirds or more of the time) jobs as identified by the vocational expert. See DOT Nos. 726.687-010 and 739.687-030, 1991 WL 679633 and 1991 WL 680180. Because the jobs identified by the vocational expert – assembler, small products, and electronics worker – do not require any climbing, balancing, stooping, kneeling, crouching or crawling, Plaintiff's performance on those tests is irrelevant to the ALJ's finding.

Therefore, because the physical therapist's evaluation does not conflict with the findings made by the ALJ, the Court respectfully recommends that substantial evidence supports the ALJ's RFC finding.

*3. Whether the ALJ failed to consider Plaintiff's obesity and recognize that it is a severe impairment*

Next, Plaintiff argues the ALJ failed to consider Plaintiff's obesity as required by S.S.R. 02-1p, and failed to recognize that it is a severe impairment which more than slightly limits Plaintiff's basic work activities. Plaintiff alleges that in this case, the ALJ did not consider his obesity and did not discuss the effect his obesity has on his ability to perform work on a regular and continuous basis. In addition, the ALJ even failed to recognize Plaintiff's obesity as a severe impairment.

At the second step in the evaluation process, the ALJ is to "consider the medical severity of the [Plaintiff's] impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination "significantly limit" the claimant's "physical or mental ability to do basic work skills." Phillips v Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing C.F.R. § 404.1520(c)). At the second step, the Plaintiff bears the burden of proof that he suffers from a severe impairment or combination of impairments. Gibbs v. Barnhart, 156 Fed. Appx. 243, 246 (11th Cir. 2005). An impairment or combination of impairments is not severe if it "does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities," including: (1) "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." Id. (citing 20 C.F.R. § 404.1521(a),(b)); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) ("an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the

individual that it could not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.").

In this case, Plaintiff suffers from morbid obesity.  (Tr. 165-66).  His weight was repeatedly around 300 pounds for several years.  (Tr. 137, 159, 161, 242).  On August 3, 2006, his body mass index was determined to be 39.5.  (Tr. 161).  In addition, at the hearing claimant testified that he is 6 feet ½ inches tall and his weight is 300 pounds.  (Tr. 392-93).

Plaintiff argues that the ALJ failed to consider his obesity and to find it was a severe impairment under the standard articulated in SSR 02-01p.  Pl's Br. at 17-20.  Plaintiff asserts that the ALJ then relied on VE testimony in order to conclude that Plaintiff could perform work at step five.  (Tr. 27-28).  However, "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).

SSR 02-1p states that "we will find that an impairment(s) is 'not severe' only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities."   While the evidence shows that Plaintiff was obese, there is no evidence that Plaintiff's obesity caused any functional limitations.  In fact, while several of the records in the evidence note Plaintiff's weight, include a diagnosis of obesity, and or advise Plaintiff to lose weight, none of the records indicate that Plaintiff's obesity caused any functional limitations.  (See e.g., Tr. 194, 205, 209).   At the hearing, Plaintiff testified that he was told that he needed a hernia repair operation, but that his doctor advised he would first need to lose 100 pounds.  (Tr. 407).   Plaintiff indicated that was "never going to happen" and that he had not weighed as little as 200 pounds since he was 15 years old.  (Tr. 407).  Plaintiff admits that for his entire adult life he

has been overweight. (Tr. 407). However, the record shows that Plaintiff worked from 1977 through 2003, with the exception of two years. (Tr. 63). It is, therefore, indicated from the medical and testimonial evidence that Plaintiff had a long work history during the time he admits he was obese, and that his obesity did not cause him any limitations in his work as a diesel mechanic. (Tr. 416). Work as a diesel mechanic is classified as heavy and exceeds the ALJ's finding that Plaintiff can now perform only light work. (Tr. 24, 416, see U.S. Dep't. of Labor, Dictionary of Occupational Titles, (DOT) No. 625.281-010, 1991 WL 685350 (4th ed. 1991)). Moreover, SSR 02-1p clarifies that no specific weight or descriptive term (*e.g.*, morbidly obese) equates with a severe impairment. SSR 02-01p.

Plaintiff claims that he repeatedly alleged his obesity significantly affected his ability to perform work, citing to his inability to put weight on his right knee and that his right knee injury had caused him to overcompensate on his left side. Pl's Br. at 19-20. However, these gait problems relate to Plaintiff's right knee injury (subacute rupture of the patellar tendon) and surgery resulting from a fall in June 2003, and not to his lifelong obesity. (Tr. 240-46, 397-98). Further, Plaintiff alleges disability beginning in June 2003, which is the date of his fall, but he admittedly had a weight problem before June 2003. (Tr. 395, 407).

In this case, the ALJ did note that Plaintiff is obese. (Tr. 25). But the ALJ found that the records indicate that the medical evidence failed to support a finding that the Plaintiff is significantly limited in his ability to perform some type of work activity or activities of daily living. (Tr. 26). In fact, on Plaintiff's Disability Report he indicated his disability was as a result of anxiety/panic attacks, high blood pressure, and his knee impairment, but did not mention obesity as a basis for his claim. (Tr. 92). The ALJ's decision correctly does not identify obesity as a severe impairment or

include any limitations as a result of obesity because the record shows that Plaintiff's weight did not have a minimal effect on Plaintiff's ability to perform work.

### 4. Whether the ALJ failed to consider Plaintiff's anxiety and panic disorder

Finally, Plaintiff argues that the ALJ erred when she failed to conclude that Plaintiff's anxiety and panic disorder impairments were severe impairments at Step Two, failed to evaluate Plaintiff's mental impairments in terms of the four functional areas specified in the regulations, and failed to impose limitations associated with Plaintiff's mental limitations in the RFC.

- *Severe Impairment*

At the second step in the evaluation process, the ALJ is to "consider the medical severity of the [Plaintiff's] impairments." 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination "significantly limit" the claimant's "physical or mental ability to do basic work skills." Phillips v Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing C.F.R. § 404.1520(c)). At the second step, the Plaintiff bears the burden of proof that he suffers from a severe impairment or combination of impairments. Gibbs v. Barnhart, 156 Fed. Appx. 243, 246 (11th Cir. 2005). An impairment or combination of impairments is not severe if it "does not significantly limit [the plaintiff's] physical or mental ability to do basic work activities," including: (1) "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." Id. (citing 20 C.F.R. § 404.1521(a),(b)); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) ("an impairment can be

considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.").

While the record contains evidence of Plaintiff's treatment for anxiety, there is no evidence that anxiety significantly limited Plaintiff's ability to perform any of the activities required by basic work. Plaintiff relies on the opinion provided by consultative examiner Claudia Zsigmond, Psy.D. and treatment provided by Dr. Aguilar. Pl's Br. at 22-23. The ALJ extensively discussed the records of these physicians in her opinion and findings. (Tr. 26). The ALJ noted that in a consultive examination on May 23, 2006, performed by Dr. Zsigmond, the Plaintiff reported that he began having problems with anxiety 22 years ago, but that his symptoms had been relatively controlled with medications. (Tr. 26). The ALJ also noted from the records that:

> She [Dr. Zsigmond] noted that the claimant reported that he does not drive alone due to the fear of having panic attack and that he has poor concentration and irritability due to pain and limited sleep. Dr. Zsigmond noted that the claimant presented as somewhat irritable, but appeared in no acute mental distress. She noted that the claimant indicated that he spent his time primarily with family members and that his day consisted of watching television, preparing simple meals and taking short walks.

(Tr. 26). The ALJ then gave significant weight to the opinion of Dr. Zsigmond, as Dr. Zsigmond "indicated that the claimant did not appear to be in any acute mental distress and felt that he would benefit from vocational training." (Tr. 26).

Further, the evidence from Plaintiff's treating doctor, Dr. Aguilar, reflects a diagnosis of anxiety, but no functional limitations or work-related restriction were noted by Dr. Aguilar. (Tr. 248-83). In fact, on April 15, 2003 and on November 10, 2005, Dr. Aguilar noted Plaintiff was doing well and doing better. (Tr. 253, 269). Merely because Plaintiff has been diagnosed with anxiety does not mean that his anxiety limits his ability to work. As the Eleventh Circuit has stated,

"the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

Therefore, the evidence in the record supports the ALJ's determination at Step Two that Plaintiff's anxiety and panic disorders are non-severe impairments.

• *Paragraph B Criteria*

Plaintiff also argues that the ALJ failed to evaluate Plaintiff's mental impairments in terms of the four functional areas as specified in 20 C.F.R. §§ 404.1520a, 416.920a ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe"). These four broad functional areas are known as the "paragraph B" criteria. "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).

In this case, the ALJ evaluated Plaintiff's mental impairment in the areas required by the Commissioner's regulations. (Tr. 23). The regulations require consideration of Plaintiff's impairment's effects in four functional areas. 20 C.F.R. §§ 404.1520a, 416.920a. The regulation states that if the degree of limitation in the first three functional areas is rated as mild, and rated with none in the fourth area, the agency will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Here, the ALJ discussed Plaintiff's mental impairment, stating that Plaintiff's medical evidence showed a mild limitation in

activities of daily living, and noting that Plaintiff could prepare his own simple meals and care for his personal needs but that his children did the house cleaning. (Tr. 23). Regarding Plaintiff's social functioning, the ALJ found Plaintiff had mild limitations, noting he participated in social activities with his family. (Tr. 23). In the area of concentration, persistence and pace, the ALJ found Plaintiff's limitations were mild based on Plaintiff's unsubstantiated report of difficulties in this area. (Tr. 23). Finally, the ALJ concluded that Plaintiff had no episodes of decompensation. (Tr. 23). The ALJ carefully went through the four functional areas as required by the regulations and, based on Plaintiff's limitations, correctly concluded that his anxiety was not a severe impairment. (Tr. 22-23). The ALJ concluded that:

> Because the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 C.F.R. 404.1520a(d)(1) and 416.920a(d)(1).

(Tr. 23). Therefore, the Court recommends that substantial evidence in the record supports the ALJ's conclusion that Plaintiff's mental impairment was not severe because the medical record does not support a finding of significant functional limitations in this area.

• *Failure to impose limitations associated with Plaintiff's mental limitations in the RFC*

In passing, Plaintiff alleges that the ALJ failed to impose limitations associated with the Plaintiff's mental limitations in the RFC. But the ALJ did note after discussion of the Paragraph B criteria that:

> The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity

assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.

(Tr. 23). After identifying Plaintiff's RFC (Tr. 24, Finding 5), the ALJ stated that she had considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. In discussing her RFC findings, the ALJ went on to discuss claimant's testimony regarding his mental limitations, including his long history of panic and anxiety attacks (Tr. 24), the records of treatment for anxiety from Dr. Aguilar, and the consultative examination from Dr. Zsigmond, Psy.D (Tr. 26), and determined that after careful consideration of that evidence that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC.

Therefore, the Court recommends that the ALJ did not fail to impose limitations associated with Plaintiff's mental limitations in the RFC.

Accordingly, it is now **RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this ___14th___ day of December, 2011.

**SHERI POLSTER CHAPPELL**
**UNITED STATES MAGISTRATE JUDGE**

Copies: All Parties of Record